UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
SEP 11 2019
David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. 19CR679 |
| STEVEN INBODY and HOAI-HUONG TRUONG, | § § § | UNDER SEAL |
| Defendants. | § § | |

# INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States, or a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations:

      a.    As of on or about October 6, 2014, Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Prior to on or about October 6, 2014, hydrocodone was classified as a Schedule III controlled substance. Hydrocodone, sometimes prescribed under brand names including Norco, Lortab, and Vicodin, was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive.

      b.    Carisoprodol was classified as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c). Carisoprodol, sometimes prescribed under brand name Soma, was a muscle relaxant and was highly addictive. The FDA recommends carisoprodol only for acute treatment for two to three weeks at a time.

5.    Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the Drug Enforcement Administration ("DEA") assigned a unique registration number to each qualifying medical practitioner including physicians and nurse practitioners.

6.    Chapter 21 of the Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within

the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. All prescriptions for controlled substances had to be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a). "The refilling of a prescription for a controlled substance listed in Schedule II is prohibited." 21 C.F.R. § 1306.12(a); 21 U.S.C. § 829(a).

8. Title 3 of the Texas Occupations Code Section 157.0511 granted a physician the authority to delegate the prescribing or ordering of a Schedule III, IV, or V controlled substance, including to an Advanced Practice Registered Nurse ("APRN") or physician assistant, but barred a physician from delegating the prescribing or ordering of a Schedule II controlled substance except in narrow circumstances not present here.

9. Title 3 of the Texas Occupations Code Section 201.002(c)(2) stated that the practice of chiropractic does not include the prescription of controlled substances, dangerous drugs, or any other drug that requires a prescription.

**DEFENDANTS AND ENTITIES**

10. Defendant **STEVEN INBODY** was licensed by the State of Texas to practice medicine and maintained a DEA Registration Number. **STEVEN INBODY** is the owner and medical director at Consultative and Therapeutic Neurology.

11. **HOAI-HUONG TRUONG** (a/k/a/ Dr. Laura) was a chiropractor licensed by the State of Texas. **HOAI-HUONG TRUONG** was employed at Consultative and Therapeutic Neurology.

12. Consultative and Therapeutic Neurology was a medical clinic doing business at 7505 South Main, Suite 125, Houston, Texas 77030. Consultative and Therapeutic Neurology is not registered with the Texas Medical Board as a pain management clinic.

## COUNT ONE
### Conspiracy to Unlawfully Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

13. Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

14. From in or around January 2018 through in or around September 2019, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas and elsewhere, Defendants

**STEVEN INBODY and
HOAI-HUONG TRUONG**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally distribute and dispense, mixtures and substances containing a detectable amount of controlled substances, including hydrocodone, a Schedule II controlled substance, and carisoprodol, a Schedule IV controlled substance, outside the usual course of professional practice and not for a legitimate medical purpose.

4

## Purpose of the Conspiracy

15. It was the purpose and object of the conspiracy for Defendants and their coconspirators, known and unknown, to unlawfully enrich themselves by, among other things: (a) prescribing controlled substances without a legitimate medical purpose and outside the scope of professional practice; (b) generating large profits from those prescriptions; and (c) diverting the proceeds from those controlled substance prescriptions for the personal use and benefit of Defendants and their co-conspirators known and unknown to the Grand Jury.

## Manner and Means of the Conspiracy

The manner and means by which Defendants and their coconspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

16. **STEVEN INBODY** owned and operated Consultative and Therapeutic Neurology.

17. **STEVEN INBODY** maintained a Texas medical license and a DEA Registration Number. With these credentials, **STEVEN INBODY** pre-signed prescriptions for Schedule II through IV controlled substances, including hydrocodone and carisoprodol, among others.

18. **STEVEN INBODY** and **HOAI-HUONG TRUONG** wrote or caused to be written prescriptions for controlled substances that often had no legitimate medical purpose and were outside the usual course of professional practice, mostly for hydrocodone, a highly addictive and often-abused opioid, and carisoprodol, a muscle relaxer that, when taken in combination with an opioid, enhances the "high" from the opioid.

19. Although she was not a licensed physician or mid-level practitioner, **HOAI-HUONG TRUONG** regularly conducted "medical visits" with customers in place of the

physician, **STEVEN INBODY**. Such "medical visits" with **HOAI-HUONG TRUONG** often only lasted several minutes, and did not include a physical examination.

20. Customers regularly received prescriptions for controlled substances, including hydrocodone, which were purportedly signed by **STEVEN INBODY**, though **STEVEN INBODY** often did not see or treat those patients.

21. In some instances, customers received prescriptions for controlled substances, including hydrocodone and carisoprodol, without being examined by any anyone.

22. **STEVEN INBODY** received the proceeds from prescribing controlled substances without a legitimate medical purpose and outside the usual course of professional practice and, in turn, paid **HOAI-HUONG TRUONG** a salary for her role in the conspiracy.

23. Between in or around January 2018 and in or around August 2019, **STEVEN INBODY** signed approximately 7,900 prescriptions for controlled substances for approximately 798,000 dosage units, including approximately 2,800 hydrocodone prescriptions for approximately 353,000 dosage units and approximately 1,000 carisoprodol prescriptions for approximately 92,000 dosage units, many of which were prescribed outside the usual course of professional practice and without a legitimate medical purpose.

All in violation of Title 21, United States Code, Sections 846 & 841(b)(1)(C), (b)(2).

## COUNTS TWO–SIX
**Unlawfully Distributing and Dispensing Controlled Substances and Aiding and Abetting**
**(21 U.S.C. § 841 & 18 U.S.C. § 2)**

24. Paragraphs 1 through 12 and 16 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

25. On or about the dates specified below, in the Houston Division of the Southern District of Texas, Defendants,

## STEVEN INBODY and
## HOAI-HUONG TRUONG

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally distribute and dispense the controlled substances alleged below outside the usual course of professional practice and not for a legitimate medical purpose:

| Count | On or about date | Controlled Substances | "Patient" |
|---|---|---|---|
| 2 | September 6, 2018 | Norco | K.J. |
| 3 | October 9, 2018 | Norco | K.J. |
| 4 | November 28, 2018 | Norco | K.J. |
| 5 | October 9, 2018 | Norco Soma | S.E |
| 6 | November 28, 2018 | Norco Soma | S.E. |

All in violation of Title 21, United States Code, Section 841(a), (b)(1)(C), (b)(2) & Title 18, United States Code, Section 2.

### NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853(a))

26.     Pursuant to Title 21, United States Code, Section 853(a), the United States of America gives notice to Defendants **STEVEN INBODY and HOAI-HUONG TRUONG** that upon conviction of an offense in violation of Title 21, United States Code, §§ 841 and 846, the following is subject to forfeiture:

      a.     all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and

7

b. all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

27. Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

28. Defendants are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendant or his co-conspirators cannot be located upon the exercise of due diligence because it:

a. has been transferred, or sold to, or deposited with a third party;

b. has been placed beyond the jurisdiction of the Court;

c. has been substantially diminished in value; or

d. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL

Original Signature on File

_____
FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

ALLAN MEDINA
ACTING CHIEF, HEALTH CARE FRAUD UNIT
U.S. DEPARTMENT OF JUSTICE

_____
CATHERINE WAGNER
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice